First case this morning, Adam Graff v. The Workers' Compensation Commission, 5-0-8-0-6-1-6. Counsel, please. Good morning, Your Honor. May it please the Court, Counsel, my name is Jennifer Bardieri. I'm here on behalf of the appellant, Mr. Adam Graff. Your Honor, this is a situation wherein we have a 29-year-old individual who on April 19, 2007, was working as an iron worker for the Respondent. On that day, he picked up a approximately 50-100 pound bundle of trim, at which time he felt pain in his back, in his low back, enough to bring him to his knees. He was taken to the emergency room where he remained for the next three days with complaints of low back pain and received treatment for that injury. A couple weeks later, he was seen by Dr. Matthew Gornett, a spinal surgeon, who indicated that Mr. Graff was in need of immediate surgery. Surgery was done, his back was fixed, and he was returned to work. In this situation, the arbitrator found that while there was, in fact, an accident, and yes, there was, in fact, an injury, there was no causal connection for the need for surgery and the injuries that were taken care of as a result of that surgery. What do you base that upon? Your Honor, that is a very good question. I believe that the arbitrator relied on Dr. Himes' opinion, the independent medical examiner in this case. The problem with Dr. Himes' opinion is this is clearly an individual who had a pre-existing condition. No one disputed that. There are MRI comparisons which are done. The MRI findings show that while there was herniations in this gentleman's back before the injury, the size of that herniation did, in fact, increase. Dr. Himes' opinion was he would have needed surgery regardless of whether this accident happened or not. Apparently, Dr. Himes has a crystal ball that can tell the future, and he can also tell us that, well, yeah, I see there's a bigger herniation on the MRI, but I don't have any explanation for that. I just know it could not have been that accident. Can't the arbitrator and can't the Commission find Dr. Himes' opinions to be more persuasive than Dr. Burnett's? Can't they do that? They certainly can, Your Honor, but again, it becomes the manifest way to the evidence, which this Court is well aware that is the standard. But the problem is there is nothing to support Dr. Himes' opinion. It's not enough for him to simply say, oh, well, you know, I have a crystal ball and he would have needed surgery regardless. When you're looking at the evidence and the facts, what we have here is a pre-existing condition. So what? We have a guy who had pain complaints in the weeks before the accident. So what? We also have an individual who they claim was a surgical candidate before the accident. Again, so what? The rules are the employer has to take the employee as he is, pre-existing conditions and all. So when you look at the facts in this case, what we have is an individual who has a complaint that he felt a click in his back the day of the accident. We have new objective findings on an MRI that show these herniations have increased in size. So it's not only really pitting Dr. Burnett against Dr. Himes, it's looking at all of the evidence, which is there's new objective findings, there's the increase of pain complaints, and we have a surgeon who's saying this is a new injury. There's objective findings, and then we have Dr. Himes, who again is looking at his crystal ball saying, eh, he was going to need surgery regardless of whether this happened or not. Well, what about the other scenario in between? What about if the worker that accident aggravated or accelerated the pre-existing condition? What does that mean? If it aggravates or accelerates a condition, then again, the rules are going to say that the employer is on the hook for that. All we need is a causative factor. Dr. Himes again is looking at his crystal ball and saying, oh, well, yeah, it was just a temporary aggravation. Again, he was going to need this surgery regardless. What he ignores is the increase in subjective complaints as well as the new objective findings on the MRI. The other objective findings we also have are the surgical findings from Dr. Burnett, which indicate there's several herniations, there's annular tears, and there's disc fragments that were all removed during the surgery. So again, I don't think it's a situation where it's just a choice, oh, who do you believe, Dr. Himes or Dr. Burnett. You have to look at all of the evidence, which clearly shows this is a new injury and that the work accident was at least a causative factor in the development of that injury. So what is it specifically that makes it apparent that the opposite conclusion is clearly apparent? What is it? I think what we're looking at is the petitioner's testimony of his complaints, Dr. Burnett's findings that it's a new injury, and even more importantly, I think it's that MRI result where we have a new objective finding that we have a herniation that has increased in size. Those objective findings correlate to the testimony not only of the petitioner, but the records that you see from the emergency room, which indicate this was an increase in symptoms, there was a click hurt in the back, the pain that brought him to his knees, and a gentleman who spent three days in the emergency room following this accident. Any merit to the arbitrator's finding that Dr. Burnett didn't know a lot of things and hadn't reviewed the past medical records in making his decision? I don't believe so, Your Honor, because again, what we have is objective findings that sync up with the subjective complaints. When Mr. Graff went in and saw Dr. Burnett, he was very, you know, he was up front, hey, look, I've had these pre-existing problems. That's what the arbitrator says Dr. Burnett relied upon, was the history given by the claimant. That is what the arbitrator found, Your Honor, but again, Mr. Graff, the records of Dr. Burnett indicate that there was a gap of three months' time. The records indicate, no, it was actually two weeks' time, but again, we're back to, okay, so two weeks before the accident, he has complaints of 10 out of 10. Did Dr. Burnett look at the MRI? I don't believe his records were clear if he had the comparison of the MRI. What we do have is Dr. Higham, who did compare the MRIs and fully admitted that the disc herniation had increased in size from the time of the first MRI to the time of the MRI after the accident. But Dr. Higham doesn't give us any opinion as to why that would have increased in size. What that does sync up with is Dr. Burnett's opinion that there's been a new injury. Well, according to Dr. Higham, the MRI of 2005 as compared to the MRI of 2007 showed no change in L5-S1. He observes some form of increase in size between August 2005 and April 2007 in the L4-5 herniation, but testifies it was absolutely impossible to tell when that increase in size took place. Right, and any of the doctors are going to tell you you cannot look at an MRI and date an injury, so what you have to then do is look at the subjective complaints and the timing of what's gone on around there. When we're looking in the 2005 comparing to the 2007, what we have is an individual who was working full duty, was able to do his job, no other incidents save for the incident of April 19, 2007. So, again... What if it's just a natural progression of the condition of the dentist? But that's not what anybody's testimony is. Again, Dr. Higham, when asked, he couldn't say, all he could say is for sure, well, no, it couldn't have been that accident. He opined that the condition, he claimed his need for surgery was a result of pre-existing chronic degenerative condition. That was his opinion. That was his opinion, Your Honor. But again, taking Higham's opinion is in that vacuum. He makes that statement and there's nothing to support that statement. The arbitrator cannot, the commission cannot latch onto a decision just because someone makes the statement. Do you think the commission found any significance in the fact that when the claimant was discharged from the hospital, he was told to follow up with Dr. Hayworth, but instead went to Dr. Gornet at the recommendation of his attorney? I don't believe that that was any... I don't believe that the commission really latched onto that, Your Honor, I don't. I don't have any evidence to the contrary, but again, I think what we've got is the manifest way that the evidence, when you look at the subjective complaints of the petitioner, the testimony of his treating physician, the surgical findings of his treating physician, as well as the objective MRI, what we have is a significant amount of evidence that proves there was an accident that contributed to his pre-existing condition, resulting in the need for surgery. And again, all we have is Dr. Hayworth and his crystal ball saying, eh, it couldn't have been the accident, he was going to need this regardless. Obviously, you need to take issue with Dr. Hayworth's opinions as part of your argument, although it appears that they were supported by his comparisons of the MRI and CT scans of the claimant's back, taken in 2005 with the scans taken on April 20th. But did Dr. Gornett ever review the scans prior to rendering his causation opinion? I do not have that information, Your Honor. I don't believe that his records spoke to that, so I do not believe that he had that comparison. Wouldn't that be important? Would that kind of weaken his position? It certainly would, but I guess I don't, again, I don't know that Dr. Gornett compared them, but when he makes the statement that there is a larger discarnation, to me it would indicate that Dr. Gornett did do a comparison. He can't say that there's a change in the size of the herniation unless he did, in fact, take a look at that 2005 MRI. But we don't have it in the record? I don't believe so, Your Honor. Again, I just think what we have to do is, as he says, it's larger, and to me that indicates there is a comparison. He didn't indicate there is a new herniation that did not exist. What he says is there was a herniation that has gotten larger. But we don't know what the basis of his base opinion that there even existed a herniation, other than the exam in April, right? The exam, the review of the new MRI, and I would anticipate the history he received from his patient. Okay, so the base that he has a condition based on history, but not based on any radiographic imagery or anything. I can't point to the record and say that he did for sure, Your Honor, I cannot. Okay. Again, Your Honors, what we have here is a case where the employer must accept the employee as he is, pre-existing conditions and all. They don't get a free pass because there was surgical discussion before this accident. His history is what it is. He was at work. He injured himself. The testimony, and I believe the evidence, shows that it was this accident that contributed to his need for surgery. I believe that the manifest way supports a finding of causal connection. And with that, this would follow with the medical bills as well as the TTE. So we would respectfully request this Court reverse the finding of the commission and find that there was causal connection. Thank you. Thank you, Counselor. Counselor, please. May it please the Court, Counsel, I'm Greg Kellner here on behalf of the respondent of Redenauer Steel Records. It's understandable why the petitioner wants to downplay what Dr. Heim said. The inescapable fact is that Dr. Heim has one very distinct advantage over Dr. Gornett, and that is that Dr. Heim had the opportunity to not only look at the 2005 and the 2007 MRI films, he also had the opportunity to take a look at all of the medical records which predated the April 19, 2007 accident. And that is significant. And again, I can understand the petitioner arguing that those records and what's in them really isn't all that significant, because there is a lot of very damaging evidence in there insofar as assessing whether there's a causal relationship here. I'd remind the Court that the record does reflect that Mr. Graff had been having low back problems since 1999. He underwent that MRI in 2005 because he was complaining of low back pain and right leg radicular symptoms. Dr. Hefner, who's a neurosurgeon and saw him in October of 2005, said that he's got a herniation L4-5 and L5-S1. He underwent, Mr. Graff underwent a couple of rounds of injections, and what's particularly telling is if you look at the records from, I believe it's Memorial Hospital from January of 2007, Mr. Graff indicates severe low back pain, abandonment of all pleasurable activity, pain and numbness in his legs, pinching and shooting pains down his legs, and in fact his pain diagram depicted stabbing pain in the low back with numbness radiating down both legs. If you compare that picture to Mr. Graff's picture after this accident, the complaints are virtually identical. Yes, Dr. Heim did say that there had been an increase in the size of the herniation at L4-5. He also said, as it was pointed out here this morning, that it was impossible to say when that herniation occurred. I would submit to you that some reasonable inferences that may very well have been drawn by the commission were that this increased herniation may have occurred in January of 2007, or before he went in for the epidural injections. It could certainly have occurred prior to that April 6, 2007 visit when Mr. Graff goes in to see his primary care physician and is essentially reporting the same type of symptoms, and it's at that point that his own primary care physician says, you need to get another MRI and you need to be seen by a neurosurgeon. There's also, in terms of evaluating whether the commission's decision was against the manifest way of the evidence, I also think it's important to consider the notion that the commission and the arbitrator, by virtue of their review of the evidence, had to assess the petitioner's credibility. Let's take a look at that, because I think that is kind of significant. When Mr. Graff sees Dr. Gornett, his own physician, on May 14, 2007, he tells him that his last low back treatment was three months prior. Now, there's a world of difference between three months, and three weeks, so right off the bat, he's downplaying the prior medical treatment. And there's absolutely nothing in Dr. Gornett's initial office note to indicate that Mr. Graff had provided a detailed description of the medical treatment prior to the work entry. Now, yes, there is some mention in there about some of the conservative treatment that had gone on, but it's a very broad picture, and there's been a lot of medical treatment and a lot of discussion about this man's symptoms, and there's no indication really that there was any discussion with Dr. Gornett about that. Secondly, let's take a look at Mr. Graff's trial testimony. When he was asked on direct examination about his symptoms, he said, well, they were off and on, and they were really nothing major. And he also said that when this happened on April 19, 2007, his lawyer asked him, were you under treatment by any physician for your low back pain? And his response is no. It's a little bit hard to understand that response, since the man had seen a doctor with complaints of low back pain, radicular symptoms, two weeks prior to the accident. And it was only on cross-examination, when I asked him about his symptoms before the accident, his treatment before the accident, that he finally relented and said, yes, I was having these problems, I was having these symptoms, I was undergoing this medical treatment. Finally, I guess to respond to the issue about what did Dr. Gornett see and what did Dr. Gornett not see, there's no evidence that he took a look at any of this man's medical records which predated the accident. There's also absolutely no evidence that he took a look at that 2005 lumbar MRI. Quite frankly, I've seen enough of Dr. Gornett's records that if he'd have seen that 2005 MRI, he'd have said something about it in there. And I think a reasonable inference that the Commission can certainly draw from the absence of a reference to those pre-accident records and that 2005 MRI was that Dr. Gornett never saw them. My position, obviously, is that the Commission's decision was the correct one and was not against the manifest way of the evidence. And I'd ask the Court to affirm the Commission's decision in its entirety. Counsel, what is your response to the opposing counsel's argument that the herniation in L4 and L5 increased in size between August of 2005 before the date of the accident? It may very well have. I mean, I think Dr. Hines' comment that it's impossible to know when it happened leaves the matter open to interpretation and inference that this increase in the disc herniation could have occurred at any one of multiple points between 2005 and 2007. I say that simply because, Your Honor, if you look at the medical records that document Mr. Graff's treatment during that period, there are numerous times where he goes into the doctor, Dr. Pruce, and comments about how severe his low back pain is. And even that January 2007 note that's generated in conjunction with the injections, it's pretty clear from looking at that that he is having some extraordinarily severe symptoms. So I think it was reasonable for the Commission to conclude that that increase in the herniation could have occurred any time up through April the 19th of 2005. Wouldn't the appropriate finding in this case by the Commission have been not that he sustained it prior to April 19th, but rather he was unable to prove that it was the result of April 19th and you can't tell when the herniation increased. And it occurs to me that's the appropriate finding. It comes out the same place, but... I don't know that in the final analysis if it's necessary. I think maybe it's a distinction without it. Well, I'm not sure it's a distinction without a difference. It's one thing when you say you find that it happened before a certain date as compared to a finding saying you couldn't prove that it happened because of such a date. Yeah, I mean, I think that would be appropriate for them if they found that. And then they certainly could have based upon what the evidence provided. Would the Commission have gone the other way on that? And found causal connection? I don't think so. I'll put it this way. I suppose if from an evidentiary standpoint, none of these prior medical records had come in. I suppose from an evidentiary... Because if that hadn't happened or if Dr. Heim hadn't seen those records, his opinion probably would not... He would have probably been forced to conclude that yeah, this accident in April of 2007 aggravated... So the evidence, just as it exists today, there's no change in the evidence. The Commission went the other way. They credited Garnett, or basically wrote their decision based on Garnett and the evidence there. Would you be able to say that the opposite conclusion was clearly apparent? Absolutely. I think because of all the evidence or the discussion of what's in the record that's cited in the brief and what I've touched on here very briefly this morning. I think the credibility issue is pretty significant in terms of what the petitioner told his doctor, what he testified to. In fact, even what he told Dr. Heim. There was obviously an attempt to downplay the severity of the problems when he saw Dr. Heim that existed before April the 19th. When you have that many disconnects between what's reality in terms of what the medical record shows and what he's telling the arbitrator, what he's telling his own doctor, what he's telling the Section 12 examiner, I don't think you can ignore that in terms of your assessment of, is his version, is his explanation that my problems got worse on April the 19th, 2007, really believable? So I don't think that, I don't see that the commission could have gone the other way with this, given the overwhelming evidence. Does it take his testimony out of the picture completely and just look at the medical? I think the result is the same. Okay. Thank you, counsel. Thank you. Your Honor, just briefly. Your Honor, I absolutely think that the evidence that the commission absolutely should have, not could have, should have found causal connection in this situation. Opposing counsel wants to stand up here and say, look at the prior records, look at the prior records, look at the prior records. Why don't we look at the records from the emergency room visit the day this accident happened? I can't understand the commission's findings, correct? He worked on the day of the accident. Correct. When was the day, the last day before that that he worked? My understanding is he was working in the weeks before the accident. Then when the accident happened. Wasn't March 6th the last day he worked? I believe that was the last day he had received treatment, Your Honor. As far as I know, he was working up to the point of this accident and then looking at the medical records, he spends the next three days in the emergency room because of low back complaints. So if we want to look at medical records in this situation, Your Honor, what we need to look at is the medical records from Carbondale Memorial Hospital. We can get up here and speculate and say, oh, it could have happened any time. It could have happened any time. Okay, so let's pinpoint when could this have happened. Between April of 2005 and April of 2007, was there ever any time where the claimant spent three days in a hospital, in a bed, because of low back complaints? The answer is no. The first time. You could convince Molly Mason. Your Honor, I believe that I think as your Honor questioned, I think that the panel, the arbitrators absolutely, the commission, should have absolutely looked at this evidence and found that there was causal connection in this situation. I think that the evidence supports it and any other finding is beyond, not even close to the manifest way to the evidence. Thank you, counsel. Court will take the matter under advisement for disposition, Your Honor.